MARGARET E. PIERCE, APPELLANT, V. SCHUYLER B. PIERCE,.
APPELLEE.

FILED JULY 11, 1914.  No. 17,780.

**Divorce:** SUFFICIENCY OF EVIDENCE: ALIMONY.  Evidence examined, and
found sufficient to sustain the judgment of the district court granting
plaintiff a divorce.  *Held*, further, that plaintiff was entitled to a
judgment of $8,500 permanent alimony in lieu of $6,000 awarded her
by the district court.

APPEAL from the district court for Lancaster county:
WILLARD E. STEWART, JUDGE.  *Reversed with directions.*

*B. F. Good* and *A. J. Sawyer,* for appellant.

*C. S. Polk, contra.*

BARNES, J.

The plaintiff brought this action in the district court for
Lancaster county, charging the defendant with extreme
cruelty toward her, and praying for a decree of divorce
and alimony.  A trial was had, and the court rendered a
decree in favor of the plaintiff granting her a divorce, and
requiring the defendant to pay her the sum. of $6,000 as
her permanent alimony.  The plaintiff, not being satisfied
with that amount, has brought the case to this court by an
appeal.  The defendant has filed no cross-appeal, and only
contends that the judgment of the district court was right
and should be affirmed.

The bill of exceptions discloses that plaintiff and defend-
ant were married near Emerson, Iowa, in October, 1879,.
and immediately moved to a rented farm near Shenan-
doah in that state.  At the time of their marriage the
plaintiff had what was necessary to commence housekeep-
ing, and one mare, which became the dam of a number
of colts.  Her household furniture, with the mare and
some poultry, were worth about $300.  The defendant
had a team, which was worth about $200, a set of harness.
and five heifers, for which he paid about $100.  The fore-

going was practically all the property possessed by both plaintiff and defendant. With this outfit they began housekeeping. The plaintiff milked the cows, made butter and sold the same at the market town, fed and cared for the poultry, did her housework, and aided the defendant some in his work on the farm and in the garden. In fact, she performed the duties of a good industrious housewife. She was a good manager, and sold the proceeds of the poultry and other things produced on the farm, and at the end of the first year she had a credit at the store of $12 over and above their living expenses. On March 6, 1881, their son Winfield was born, and on this account plaintiff did not do as much outside work as she usually did. A hired man was employed for the season of 1881, and for the next year things went on much the same as before. In September, 1882, plaintiff and defendant came to Nebraska and purchased the southwest quarter of section 25, township 11, range 5, in Elk Creek precinct, near the city of Lincoln. This was unimproved prairie land, and defendant entered into a written contract agreeing to pay therefor the sum of $2,650. Of the first payment plaintiff, who had inherited some money from her father's estate, paid about $300. The second instalment was for $1000, of which plaintiff testified she paid $350 out of her own funds, and the defendant paid the remainder. The following spring they moved to Nebraska, and defendant farmed a tract of land which had been purchased by the plaintiff's mother, and cornered with the land which they had theretofore purchased.

Both plaintiff and defendant appear to have been industrious, hard-working people. They prospered, and soon paid the remainder due on the contract, and defendant received a deed for the land purchased by them, and on which they resided up to the time of their separation. They engaged in farming extensively, and acquired quite a number of full-blooded Jersey cattle, with which they started a dairy. It appears that the plaintiff was fond of cattle and had a good idea of how to conduct a dairy. She did much of the purchasing of the stock, and kept the

records and pedigrees of the animals which they purchased
and raised. For a number of years they lived in an old
house on the farm, but later on, at the solicitation of the
plaintiff, the defendant built a very comfortable home
costing about $5,400. They continued to improve the
farm, built two barns thereon, and brought the land to a
high state of cultivation. The plaintiff appears to have
taken great interest in the cultivation of flowers, fruits
and shrubs, and everything that enhanced the beauty and
productiveness of their home. The defendant meanwhile
did his full share in making the improvements and en-
hancing the value of the property, so that, at the time
when this action was tried, a fair consideration of the
testimony showed the value of the farm improvements to
be about $21,000. It also appeared that the defendant, at
that time, was possessed of personal property consisting
of horses, cattle, farm implements, and such other things
as were necessary and convenient for use on the farm, of
the value of about $1,500; that he was indebted to divers
and sundry persons in the sum of $900, and his net worth,
at the time of the commencement of the plaintiff's action,
was about $21,000.

It appears from the evidence that, notwithstanding the
fact this couple prospered in the way of property accu-
mulations, the plaintiff, owing to her age and condition
of ill health, became somewhat faultfinding and dissatis-
fied with the property arrangements, and her affection for
her husband gradually turned to dislike and hatred. The
defendant, on his part, was no doubt somewhat exacting,
and in time became somewhat cruel toward the plaintiff.
Things seem to have gone from bad to worse, until finally
the plaintiff abandoned the home and commenced this ac-
tion for a divorce. The district court was evidently of
the opinion, however, that such a feeling of hostility had
arisen between the parties that there was no prospect of a
reconciliation, and in view of all of the facts the plaintiff
was entitled to a divorce.

96 Neb. 33

We have carefully read the evidence, and are satisfied that the court did not err in its findings and judgment so far as that matter was concerned, and we therefore affirm so much of the decree as granted the plaintiff a divorce.

It appears that the district court allowed the plaintiff temporary alimony to the amount of $750, suit money amounting to $50, attorneys' fees $500; plaintiff has received household goods of the value of $700, an organ worth $80, incubators and brooders of the value of $65. The allowances thus made out of the property of the defendant are of the value of $2,145. This amount deducted from the defendant's property leaves the net value thereof, still possessed by him, at about the sum of $18,855. He was also required to pay, and has paid, $50 a month, allowed by this court, as temporary alimony, which now amounts to the sum of $1,100. A substantial allowance was made by this court to pay for the bill of exceptions and for briefs and attorneys fees, and there are other expenses connected with this litigation, so that defendant, at its termination, will have unincumbered property of the value of about $17,000. As we view the testimony, the plaintiff was entitled to receive one-half of the net value of their accumulations. It follows that the decree of the district court granting the plaintiff $6,000 permanent alimony should be, and is hereby, reversed. We find that the plaintiff should receive the amount of $8,500 in lieu of the $6,000 decreed to her by the district court.

The cause is therefore remanded to the district court for Lancaster county, with directions to that court to render a judgment in harmony with the views expressed in this opinion.

JUDGMENT ACCORDINGLY.

ROSE, FAWCETT and HAMER, JJ., not sitting.