MARY E. McNAMARA, APPELLEE, V. WILLIAM C. McNAMARA ET AL., APPELLANTS.

FILED NOVEMBER 13, 1915.  No. 18349.

1. **Witnesses:** CONFIDENTIAL COMMUNICATIONS. Threatening letters by a husband to his wife while they are living apart in contemplation for a suit for divorce are not confidential communications.

2. ————: ————. Statements by one contemplating marriage, to his intended wife, as to the nature and extent of his property interests, are admissible in evidence in a proceeding to subject his property to the payment of a judgment rendered in an action for a divorce.

3. **Divorce:** CREDITORS' SUIT: SUFFICIENCY OF EVIDENCE. Evidence examined and found sufficient to sustain the judgment of the district court.

APPEAL from the district court for Brown county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*H. G. McIntire, E. C. Page* and *Alfred Pizey,* for appellants.

*R. E. Evans* and *M. F. Harrington, contra.*

BARNES, J.

This was an action in the nature of a creditor's bill to subject the land of the defendant William C. McNamara to the payment of a judgment for permanent alimony and an allowance for the support of his infant children, rendered by the district court for Dakota county on January 4, 1912. The judgment was transcripted to the district court for Brown county, where the defendant's land was situated. Execution was issued thereon on the 17th day of June, 1912, and returned wholly unsatisfied. The action was commenced on the 8th day of July, 1912.

It was alleged in the petition that the judgment of the district court for Dakota county was in full force and effect, and had never been reversed, modified, superseded or appealed from; that there was due from William C. McNamara, to his wife, the sum of $6,000 and interest,

and in addition instalment sums aggregating $300 and interest; that on June 17, 1912, for want of goods and chattels, execution was levied on the land in suit; that the decree is a valid lien on the defendant's land, subject to a first mortgage lien of $10,000 and interest; that the mortgage for $12,888.80, executed to defendant's brother, Cornelius, is fraudulent, void, and without consideration; that William C. McNamara and his brother, Cornelius J. McNamara, connived and conspired together to cheat and defraud the plaintiff out of the alimony which he, William C. McNamara, then owed her, and which had been allowed by the district court for Dakota county, Nebraska. Separate answers were filed by the defendants, admitting the entry of the decree of divorce of January 4, 1912, the filing of a transcript thereof in Brown county, Nebraska, the issuance of an execution thereon, but denied that the decree had not been appealed from, or that there was any fraud in the execution of the mortgage in question; alleged the *bona fides* of the indebtedness of William C. McNamara to his brother, Cornelius, resulting in the execution of the mortgage claimed to be fraudulent. Separate denials were filed by the plaintiff to the answers of the defendants. The cause was tried to the district court for Brown county, Nebraska, without the intervention of a jury, and resulted in findings and a judgment for the plaintiff. The defendants have appealed.

Appellants contend that the court erred in permitting the plaintiff, Mary E. McNamara, to testify against the defendant, who was her former husband, for the reason that the conversations in question constituted confidential communications between husband and wife.

The record discloses that plaintiff left her husband some considerable time before she commenced her action for divorce; that she resided at that time at her father's home in Dakota county, Nebraska. Plaintiff had informed her husband that she was about to commence her action. In response he wrote a letter to her, in which he stated, in substance, that if she commenced the action he would beat

McNamara v. McNamara.

her out of every dollar; that he would arrange it so that it would be lawed through the courts of Dakota county, and that she would be hauled into the United States courts. This was the letter which the trial court was asked to exclude. It appears that when this letter was written the parties were living apart, and were dealing with each other at arm's length. It cannot be claimed that this was a confidential communication between husband and wife. The court, therefore, did not err in refusing to exclude this letter. *Reed v. Reed,* 70 Neb. 779.

The other evidence to which objection was made was a statement to plaintiff by her husband, before they were married, that the ranch in Plymouth county, Iowa, was owned by himself and brother and he had a half interest therein. The evidence discloses that at the time they were residing on the Plymouth county ranch they were visited by defendant's brother, Cornelius, who lived in Montana, and in a conversation with plaintiff Cornelius told her that her husband owned an interest in the Plymouth county ranch. He said: "He does really own the place, but it was put in my name for protection, and I am willing to deed it back to him any time he wants it." He further said that if the ranch was sold he "would give my husband his share of it." We think this evidence was properly received.

It is next contended that this action was prematurely brought, and in support of this contention appellants cite section 47, ch. 25, Comp. St. 1911, which reads in part as follows: "A decree of divorce shall not become final or operative until six months after trial and decision except for the purpose of review, by proceedings in error or by appeal and for such purposes only, the decree shall be treated as a final order as soon as rendered." It will be observed that the decree was rendered on the 4th day of January, 1912, and this action was not commenced until the 8th day of July of that year. It follows that, so far as the rights of the parties were concerned, the decree at the time of the commencement of this action had become

final, and was subject only to review or modification by appeal. It is true that the defendant William C. McNamara had appealed to the supreme court of this state, but no supersedeas was ever filed or allowed. The judgment was finally modified as to the amount of alimony, and it therefore cannot be successfully contended that the action was prematurely brought.

Finally, it is contended that the evidence does not support the decree. The testimony shows that when the Plymouth county ranch was sold it brought at least $45,000. The plaintiff testified that she was told that it brought $75,000, and there was evidence tending to show that William received $5,100 from his brother, with which he settled a claim with his former wife; that he received $10,000 from his brother, which was used in part payment of the purchase price of the land now in controversy, but as to any subsequent sums paid him by his brother the evidence is such that the trial court was justified in the conclusion that the mortgage executed by him to his brother on March 26, 1907, was without consideration, and was made and received with the intent to prevent the plaintiff from obtaining anything as the avails of her divorce suit, which as above stated, was commenced on March 7 of that year.

After a careful review of all of the testimony, we have reached the independent conclusion that the findings of the trial court are fully supported by the evidence, and we fail to see how a court of conscience could have rendered any different decree than the one here complained of. The judgment of the district court is therefore

AFFIRMED.

LETTON, FAWCETT and HAMER, JJ., not sitting.